UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Bounpheng SORYADVONGSA,<br><br>                     Petitioner,<br><br>v.<br><br>Kristi NOEM, et al.,<br><br>                     Respondents. | Case No.: 25-cv-2663-AGS-DDL<br><br>**ORDER GRANTING HABEAS PETITION (ECF 1) AND DENYING PRELIMINARY INJUNCTION (ECF 3) AS MOOT** |

When immigration officials arrested petitioner, a regulation required them to "promptly" conduct an informal interview, so he could contest the basis for his detention. The key issue in this habeas petition is whether an interview 29 days after arrest qualifies as prompt under that regulation. It does not.

## BACKGROUND

In 2002, an Immigration Judge ordered petitioner Bounpheng Soryadvongsa "removed from the United States to LAOS," due to his criminal history. (ECF 6-2, at 3, 7; *see also* ECF 1, at 25). Yet a few months later, Immigration and Customs Enforcement released him "under an Order of Supervision," because ICE "was unable to obtain a travel document" to Laos. (ECF 6-1, at 2.) After convictions for new drug crimes (ECF 6-2, at 7), ICE detained him for a few more days in "2024" (ECF 6-1, at 2). But the agency once again released him "on an Order of Supervision because ICE was unable to obtain travel documents" for him. (ECF 6-1, at 2.)

On September 23, 2025, ICE arrested Soryadvongsa in this case, but it did not immediately give him "an informal interview or a chance to contest [his] detention." (ECF 1, at 25.) A couple weeks later, he sought habeas relief because, among other things, he "never received the interview required by regulation." (*Id.* at 16.) On October 22— 29 days after his arrest and two days before the government's habeas answer was due— ICE "conducted an initial informal interview" of Soryadvongsa. (*See* ECF 4, at 5; ECF 6-2, at 25.)

# DISCUSSION

## A. Jurisdiction

As a preliminary matter, respondents assert that Soryadvongsa's "claims are jurisdictionally barred under 8 U.S.C. § 1252(g)." (ECF 6, at 4–5.) That provision precludes courts' "jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to *commence proceedings, adjudicate cases,* or *execute removal orders against* any alien under this chapter." 8 U.S.C. § 1252(g) (emphasis added). Yet Soryadvongsa does not contest any of those three things here. He does not, for example, dispute the validity of his removal order. Even if it is lawful, he claims that his detention is not. And "district courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a] removal order." *Lopez-Marroquin v. Barr*, 955 F.3d 759, 759 (9th Cir. 2020); *see also Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) (holding that "§ 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention").

The government's contrary view—"that § 1252(g) covers all claims arising from deportation proceedings"—has been repeatedly "rejected as implausible" by the Supreme Court. *Department of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 19 (2020) (cleaned up); *see also Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 487 (1999) ("It is implausible that the mention of three discrete events [in 8 U.S.C. § 1252(g)] along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings."). Courts must instead engage in a "narrow reading of § 1252(g)." *Reno*, 525 U.S. at 482. This Court declines respondents' invitation to do otherwise and concludes that it has jurisdiction over Soryadvongsa's habeas claims.

## B. Habeas Petition

To obtain a writ of habeas corpus, Soryadvongsa bears the burden of showing that he is "in custody in violation of the Constitution or laws or treaties of the United States." *See* 28 U.S.C. § 2241(c)(3). He asserts that his immigration detention is unlawful because,

among other things, ICE "failed to comply with its own regulations." (ECF 1, at 15.) Specifically, he contends that when ICE revoked his release, officials failed to promptly interview him, as required. (*Id.* (citing 8 C.F.R. § 241.13(i)(3)).)

When "ICE fails to follow its own regulations in revoking release, the detention is unlawful and the petitioner's release must be ordered." *Rokhfirooz v. Larose*, No. 25-CV-2053-RSH-VET, 2025 WL 2646165, at *4 (S.D. Cal. Sept. 15, 2025) (granting habeas petition due to ICE's failure to "follow" its "own regulations" and collecting cases); *see also United States v. Ramos*, 623 F.3d 672, 683 (9th Cir. 2010) ("It is a well-known maxim that agencies must comply with their own regulations."); *Mendez v. Immigration & Naturalization Serv.*, 563 F.2d 956, 959 (9th Cir. 1977) ("[C]ourts have generally invalidated adjudicatory actions by federal agencies which violated their own regulations promulgated to give a party a procedural safeguard.").

According to the regulation at issue here, ICE "may revoke an alien's release" and "return the alien to custody" for certain specified reasons. 8 C.F.R. § 241.13(i)(1)–(2). Critically, the regulation also provides for notice and an opportunity to be heard. "[T]he alien will be notified of the reasons for revocation of his or her release." 8 C.F.R. § 241.13(i)(3). ICE must then "conduct an initial informal interview *promptly* after his or her return to [ICE] custody[.]" *Id*. (emphasis added).

1. *"Promptly"*

This case turns on the meaning of "promptly" in that last regulatory proviso. "Interpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis." *Dolan v. United States Postal Serv.*, 546 U.S. 481, 486 (2006). The regulation itself does not define "promptly" nor set an explicit deadline for holding the informal interview. Nor has this Court found binding precedent or legislative history that shed light on the term.

But the regulation's context and purpose suggest that a 29-day period is too long to be deemed prompt. The regulatory context is civil detention, which is a strictly limited

form of restraint on liberty. "Civil detention violates due process outside of 'certain special and narrow nonpunitive circumstances.'" *Rodriguez v. Marin*, 909 F.3d 252, 257 (9th Cir. 2018) (quoting *Zadvydas*, 533 U.S. at 690). Understandably, "civil detainees retain greater liberty protections than individuals detained under criminal process[.]" *Jones v. Blanas*, 393 F.3d 918, 932 (9th Cir. 2004). For comparison, when the federal government moves to detain a criminal defendant, the hearing should commence "immediately" at the "first appearance" in court. 18 U.S.C. § 3142(f). Absent "good cause" or the accused's consent, the prosecution may postpone that hearing no more than "three days." *Id*. The purpose of an immigration-detention "initial informal interview" is similar, in some respects, to a criminal detention hearing. That interview "afford[s] the alien an opportunity to respond to the reasons for revocation"—that is, to contest detention—as well as to "submit any evidence or information" that support release. *See* 8 C.F.R. § 241.13(i)(3). The chance to advocate for release must ordinarily come within days of a criminal arrest. Surely, it must happen at least that quickly in the more constitutionally protected civil-arrest arena, too.

This reading of "promptly" also accords with the common understanding of the word, which means "[q]uickly; without delay" or "[a]s soon as practicable." *Promptly*, Black's Law Dictionary (12th ed. 2024). Nor, to the government's credit, do respondents urge a different interpretation. Thus, the Court concludes that ICE's 29-day delay here violated the requirement to "conduct an initial informal interview promptly." *See* 8 C.F.R. § 241.13(i)(3); *see also M.S.L. v. Bostock*, No. 6:25-cv-01204-AA, 2025 WL 2430267, at *11 (D. Or. Aug. 21, 2025) (concluding that waiting 27 days to interview an immigration arrestee "cannot reasonably be construed as a 'prompt' informal interview").

### 2. *Prejudice*

Rather than argue that it complied with the regulation, the government objects that Soryadvongsa cannot "establish that he was prejudiced" by the belated interview. (ECF 6, at 11.) In other words, "any challenge" he raised at a prompt interview "would have failed." (*Id*. at 12.) But the government offers no compelling authority that a habeas petitioner must demonstrate this form of prejudice.

The government notes that an "APA claim" requires a showing of "substantial prejudice." (ECF 6, at 11 (quoting *Community Legal Servs. in E. Palo Alto v. United States Dep't of Health & Hum. Servs.*, 780 F. Supp. 3d 897, 921 (N.D. Cal. 2025)). And respondents reference one Ninth Circuit case, which presumed in dicta that a criminal defendant's collateral attack on his deportation proceeding was subject to harmless-error review. (*See* ECF 6, at 12 (citing *United States v. Barraza-Leon*, 575 F.2d 218, 221-22 (9th Cir. 1978)).) Perhaps Soryadvongsa would lose an Administrative Procedure Act lawsuit or a criminal case that depended on his successful collateral attack. But his habeas petition is not in those legal frameworks. Respondents have not explained why these legal principles should be generalized to habeas review of civil detentions.

The necessary legal rationale is not to be found in the other cases respondents rely on either. In their two most relevant cases, the courts denied relief to habeas petitioners who never got an "informal interview," because there was no "actionable injury"—that is, the judges saw "no apparent reason" to believe that an interview "should result" in "release." *Doe v. Smith*, No. 18-11363-FDS, 2018 WL 4696748, at *9 (D. Mass. Oct. 1, 2018); *Ahmad v. Whitaker*, No. C18-287-JLR-BAT, 2018 WL 6928540, at *5 (W.D. Wash. Dec. 4, 2018). Yet neither court cited any reasoned authority for resorting to this prejudice inquiry. *See Doe*, 2018 WL 4696748, at *9 (citing no cases); *Ahmad*, 2018 WL 6928540, at *5 (citing only *Doe*). In fact, the "norm" when ICE fails to conduct an "informal interview promptly" is that "courts across the country have ordered the release of individuals stemming from ICE's illegal detention." *K.E.O. v. Woosley*, No. 4:25-CV-74-RGJ, 2025 WL 2553394, at *6–7 (W.D. Ky. Sept. 4, 2025) (collecting cases).

Especially in the context of civil detentions—when constitutional safeguards are at their zenith—this Court is unwilling to import such a prejudice analysis into regulations or binding caselaw that don't mention it. The government's authority to civilly detain anyone is strictly confined. Soryadvongsa has carried his burden of establishing that ICE exceeded those uncompromising bounds and that his custody is unlawful. Thus, he must be set free. The Court need not reach the remaining grounds in the petition.

# CONCLUSION

Soryadvongsa's habeas application is **GRANTED**, his preliminary-injunction request is **DENIED as moot**, and the November 13, 2025 hearing is vacated. Respondents must immediately release Soryadvongsa from custody subject to the conditions of the Order of Supervision that was in place before ICE re-detained him in September 2025.

Dated: November 8, 2025

_____
Hon. Andrew G. Schopler
United States District Judge